591 N.E.2d 949 (1992)
228 Ill. App.3d 272
169 Ill.Dec. 445
In the Interest of A.D., a Minor
The People of the State of Illinois, Petitioner-Appellee,
v.
A.D., Respondent-Appellant.
No. 3-91-0610.
Appellate Court of Illinois, Third District.
May 1, 1992.
*950 Mark D. Fisher, Office of the State Appellate Defender, Ottawa, TRIAL COUNSEL: Susan K. Lucas, Peoria, for A.D.
Rita Kennedy Mertel, State's Attys. Appellate Prosecutor, Ottawa, Kevin W. Lyons, State's Atty., Peoria, John X. Breslin, Deputy Director, State's Attys. Appellate Prosecutor, Ottawa, for the People.
Presiding Justice BARRY delivered the Opinion of the court.
The respondent minor, A.D., was charged by juvenile petition with unlawful use of weapons, unlawful possession of firearms, criminal damage to property, disorderly conduct, and two counts of battery (Ill.Rev. Stat.1989, ch. 38, pars. 24-1(a)(4), 24-3.1(a)(1), 21-1(1)(a), 26-1(a)(1), 12-3(a)(1)). Subsequently, a supplemental petition was filed adding two counts of robbery. At the adjudicatory hearing, the State dismissed the two robbery counts in exchange for the respondent's guilty plea to the other charges. At a dispositional hearing, the court committed the respondent to the Juvenile Division of the Department of Corrections for a period not to exceed his 21st birthday. The respondent appeals.
The factual basis for the respondent's plea established that the respondent had knowingly concealed an automatic pistol on his person while walking through a park. He threatened Deborah Ginn and threw a soda bottle through the windshield of her truck, shattering the windshield and thereby causing pieces of glass to cut Alexis Tilton's forehead. Deborah Ginn's three-year-old son was in the truck at the time. The respondent also struck Amy Bricker in the face.
At the dispositional hearing, the respondent's dispositional social history indicated that he was 14 years old and he had no prior history of delinquency. The report included the recommendation of Joseph Johnson, Director of Juvenile Court Services, that the respondent be committed to the Department of Corrections Juvenile Division for a 90-day evaluation and that he then be considered for probation.
Ten-year-old Ashley Westhaver testified that the respondent had threatened to have the respondent's younger brother, Marcus, beat him up unless Westhaver paid the respondent's admission to a swimming pool.
The respondent's mother testified that prior to his arrest, he had run away from home for about two months. She had tried to locate him but did not know where he was staying.
Thirteen-year-old Amy Bricker testified that the respondent had beat her up by punching her in the face about three times. This caused her nose to bleed.
The respondent testified and denied threatening Ashley Westhaver. He claimed that Westhaver had offered to pay for everyone that day, including the respondent. The respondent also stated that he had stayed with his younger brother's aunt during the two-month period he was away from home.
Following the above-noted testimony, the State recommended that upon completion of a 120-day evaluation at "Gift," the respondent be placed on intensive probation. The respondent's counsel recommended a 30- to 60-day evaluation and the respondent's mother agreed. The trial court found that the respondent was a serious threat to society and committed him to the Department of Corrections' Juvenile Division.
On appeal, the respondent first argues that his admission to the petition was not voluntary and intelligent because the record does not indicate that he was aware of the consequences of his admissions.
Initially, we address the State's argument that we do not have jurisdiction to entertain this appeal because the respondent failed to make a motion to withdraw the admission in the trial court. We disagree. We will follow the decision in In re J.G. (1st Dist., 1989), 182 Ill.App.3d 234, 130 Ill.Dec. 891, 537 N.E.2d 1360, wherein the First District Appellate Court assumed *951 jurisdiction over the appeal because, as in the case at bar, the trial court failed to properly admonish the minor of the need to file a motion to withdraw his admission. Under these circumstances, this court will likewise exercise jurisdiction and examine the merits of the respondent's argument.
The respondent specifically complains that the record does not indicate that he understood the potential dispositions or knew that he was waiving his rights to confront his accusers and against self-incrimination. We disagree.
In determining whether a plea or admission is intelligently made, the entire record may be examined. (In re Haggins (1977), 67 Ill.2d 102, 7 Ill.Dec. 67, 364 N.E.2d 54.) When the record is incomplete or silent, this court should presume that the trial court ruled or acted correctly. (People v. Hamilton (3rd Dist., 1978), 64 Ill.App.3d 276, 21 Ill.Dec. 139, 381 N.E.2d 74.) It is not necessary that a minor be told by the trial judge that his admission waived his right against self-incrimination and his right to confront his accusers. (In re Beasley (1977), 66 Ill.2d 385, 6 Ill.Dec. 202, 362 N.E.2d 1024.) Furthermore, the omission of an admonishment outlining the various dispositional orders which the court may render under the Juvenile Court Act does not deprive the minor of due process of law. In re Tingle (1st Dist., 1977), 52 Ill.App.3d 251, 9 Ill.Dec. 853, 367 N.E.2d 287.
The instant common law record contains the arraignment order, which indicates that the trial judge advised the respondent and his mother of "the nature of the allegations, their rights in the proceedings, and the possible dispositions." While the respondent argues that this is merely "boilerplate language" which does not insure that he was so advised, we believe we must respect the trial judge's signature on the order which, in effect, attests that he did so advise the respondent. Similarly, the adjudication order, also signed by the trial judge, indicates that the respondent understood "the possible consequences of his admission."
Furthermore, when the respondent indicated at the adjudicatory hearing that he had not understood what his counsel had just said, the trial judge engaged in the following exchange with him:
"THE COURT: Miss Lucas [defense counsel] tells me you want to admit that you committed the crime of unlawful use of weapons, unlawful possession of firearms, battery on a DeborahI'm sorry, upon an Alexis Tilton by throwing a bottle through a windshield of Deborah Ginn's car, disorderly conduct by threatening Deborah Ginn, and also with striking Amy Bricker with your open hand. Is that what you wish to do?
THE MINOR: Yes.
THE COURT: Now, if you plead guilty today to these crimes, you'll be giving up your right to a trial. Do you understand that?
* * * * * *
THE MINOR: Yes.
THE COURT: Has anybody including Miss Lucas or your mother or anybody at Gift or anybody at all forced or coerced you in any way to plead guilty?
THE MINOR: No."
The judge then questioned the respondent's mother, who indicated that she had no objection to him pleading guilty. The respondent's attorney indicated that she was satisfied that there was a factual basis for the admissions. The trial judge personally questioned the respondent about each count in the petition. The judge then concluded that the respondent's plea was voluntary, that there was a factual basis for the plea, that he had waived his rights and that he understood the possible consequences of his plea. Based on the entire record, we find that the respondent's admissions were intelligently made.
The respondent also argues that the trial judge abused his discretion in committing him to the Juvenile Division of the Department of Corrections, because of his age, lack of prior delinquencies, the misdemeanor nature of the charges and the recommendations of all concerned that he be placed in a juvenile home for a short duration.
*952 It is well settled that the disposition of a juvenile rests within the sound discretion of the trial judge and will not be overturned unless it is contrary to the manifest weight of the evidence. (In re T.M. (3rd Dist., 1984), 125 Ill.App.3d 859, 81 Ill.Dec. 526, 466 N.E.2d 1328.) In determining whether a minor should be committed to the Juvenile Division of the Department of Corrections, a trial judge may properly consider the protection of the public and inadequate parental or guardian supervision. In re V.B. (3rd Dist., 1989), 178 Ill.App.3d 842, 128 Ill.Dec. 62, 533 N.E.2d 1150.
In the instant case, the respondent committed several violent and potentially very dangerous acts, regardless of their classification as misdemeanors. Clearly, the trial judge was impressed with the danger the respondent posed to society. The trial judge's following remarks are instructive in this regard:
"THE COURT: Boy, if I ever saw a more dangerous situation, I can't recall. You are something. You are a one-man little crime wave. You don't respect people. You threaten and beat people and scare them, and then you get guns and you run away.
You are not in control of your parent. You are a definite number one serious threat to this community, not to mention being out of the control of your parent.
Ms. Lucas is free to call this a bunch of misdemeanors. That may be technically true, but this is the kindthese are the kind of offenses that cause the citizens of this community not to be able to sleep safely.
What is this attacking a woman and a child in a car, screaming racial epithets at them, beating up girls because you want to have sex with them, and then getting possession of a weapon. At the same time, you are just running the streets, out of the control of your mother.
Number one, I find [your mother] has no control over you. Number two, I find you are a danger to the citizens of Peoria."
We find that there was ample evidence in the record to support the trial judge's remarks and to support the order committing him to the Department of Corrections.
The judgment of the circuit court of Peoria County is affirmed.
Affirmed.
STOUDER and GORMAN, JJ., concur.