*In re* V.O., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. V.O., Respondent-Appellant).

Third District   No. 3—95—0835

Opinion filed May 1, 1997.

Peter A. Carusona (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Rita Kennedy Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MICHELA delivered the opinion of the court:

V.O., a minor, appeals from an order of the circuit court of Peoria County that adjudicated him delinquent and committed him to the juvenile division of the Department of Corrections (DOC) for a term not to exceed his nineteenth birthday. V.O. contends on appeal that the court erred in denying his request for a continuance to be evaluated by the Department of Alcohol and Substance Abuse (DASA) for potential acceptance into treatment and in relying on its personal

knowledge of the DOC's facility when committing him. For the following reasons, we affirm.

## FACTS

A September 1995 juvenile delinquency petition alleged that V.O. committed the offense of arson (720 ILCS 5/20—1(a) (West 1994)) in that by means of fire he knowingly damaged a building in Peoria, Illinois.

At an October 1995 adjudicatory hearing, evidence established that, on September 25, 1995, 14-year-old M.W. and 15-year-old V.O. entered an abandoned, dilapidated building where they set several small fires to plastic found around some of the windows. When flames dripped to the ground, the boys stomped them out. The boys left the building and returned approximately 10 to 15 minutes later. V.O. testified that when he and M.W. returned to the building, he did not intend to start a fire. According to V.O., he stood in the doorway while M.W. reentered the building and started the fire that resulted in damage. M.W. testified, however, that it was V.O. who started the fire that resulted in damage. Both boys ran from the scene of the fire, and neither of them made an effort to put the fire out or to contact the authorities.

The court found that V.O. was not credible and determined that he started the fire that damaged the building. The court set a dispositional hearing for November 16, 1995, and granted V.O.'s request that he undergo a drug and alcohol evaluation.

On the day of V.O.'s dispositional hearing, his counsel requested that the court delay the proceedings due to the fact that the drug and alcohol evaluation had not been performed and TASC had not yet evaluated V.O. Counsel argued that this evaluation was essential in order to provide the court with information concerning residential treatment placement. The court denied the request, finding that V.O., by his own admission, had a serious drug and alcohol problem and noting that it was aware of the available facilities for such treatment.

A dispositional social history report filed November 16, 1995, revealed that V.O. had abused drugs and alcohol since the age of 12 and that his usage progressed from monthly to weekly to daily. V.O. had never been treated for his addiction, and his adolescent years were characterized as "the point of explosive deviant behavior." Counseling efforts at the Human Service Center and the Children's Home Association failed, and V.O. had a history of prior delinquency. Specifically, in April 1993, V.O. was adjudicated delinquent for the offense of aggravated assault and was placed on probation for one

year. In August 1994, V.O. was adjudicated delinquent for the offense of unlawful possession of firearms and was committed to the juvenile division of the DOC for a period not to exceed 364 days.

This report also contained a recommendation by the director of the juvenile court services (the director). The director recommended that V.O. be committed to the juvenile division of the DOC, with a review after 120 days served. Further, that if after such review the DOC recommends that V.O. return to the community, then V.O. should be placed on probation for two years and enrolled in appropriate juvenile court services' programs.

A juvenile detention center report was also filed and indicated that V.O.'s interaction with the staff had been one of "total cooperation." It noted that V.O. accepted authority figures, displayed a positive demeanor and attitude, and was considered a normal security risk.

V.O. submitted a letter to the court that acknowledged his alcohol and drug addiction and requested an evaluation for potential placement and treatment in a rehabilitation center.

After finding that residential treatment in an unlocked facility would not be appropriate, due to V.O.'s prior record and the seriousness of his present offense, the court committed V.O. to the juvenile division of the DOC in St. Charles, Illinois, not to exceed his nineteenth birthday. The court found commitment necessary to insure the protection of the public from the consequences of V.O.'s criminal activity. The judge indicated that he had visited the DOC's facility in St. Charles and observed that it had a dedicated staff and a facility to treat chemical dependency. V.O. appeals the court's commitment order.

I

■ V.O. contends that the court erred in failing to delay his dispositional hearing until DASA had evaluated him for potential acceptance into treatment. In support of his contention, V.O. relies upon the Juvenile Court Act of 1987 (the Act), which permits as a dispositional alternative admission of a delinquent minor for treatment with DASA "where authorized under the Alcoholism and Other Drug Abuse and Dependency Act [(20 ILCS 301/40—20 (West 1994))]." 705 ILCS 405/5—23(a)(3) (West 1994).

However, section 40—20 cited in the Act and relied on by V.O. was repealed by Public Act 89—202, § 95, effective July 21, 1995, two months prior to the filing of V.O.'s delinquency petition, three months prior to his adjudication of delinquency, and four months prior to his DOC commitment. At the time of V.O.'s dispositional hearing, there

was no legislation enacted to replace section 40—20. Therefore, we find that the court neither violated the Act nor erred by failing to delay V.O.'s dispositional hearing until such an evaluation was conducted. Further, the record indicates that the court noted that V.O. had been detained for 53 days and acknowledged that to prolong this matter would not "serve any useful purpose, either to the minor or for interests of justice *** [stating] it's time to come to a disposition and address the problem that's before us."

■ The disposition of a juvenile rests within the sound discretion of the trial court and will not be reversed unless it is contrary to the manifest weight of the evidence, *i.e.*, when an opposite conclusion is clearly apparent. *In re A.D.*, 228 Ill. App. 3d 272, 591 N.E.2d 949 (1992).

■ In turning to the record, the following facts support the court's commitment of V.O. to the juvenile division of the DOC: (1) parental attempts to help V.O., including counseling efforts, failed; (2) the dispositional social history report recommended DOC commitment; (3) V.O. had a history of prior delinquency; (4) V.O.'s current charge of arson was a serious offense; and (5) the court made a specific finding that V.O. was not credible and that he started the fire that caused damage to the building.

Further, the court properly considered that V.O.'s commitment was necessary to insure the protection of the public from the consequences of his criminal activity. *In re A.D.*, 228 Ill. App. 3d at 276 (in entering a commitment order a court may properly consider the protection of the public.)

Under these circumstances, we find that the court's commitment of V.O. to the juvenile division of the DOC was not against the manifest weight of the evidence.

■ Lastly, V.O. asserts that the court violated his right to due process by considering its personal knowledge of the facility in St. Charles. However, despite the fact that V.O. had been previously committed to St. Charles and was familiar with the facility, he failed to challenge the court's observations as being inaccurate. Our supreme court in *People v. Tye*, 141 Ill. 2d 1, 22-23 (1990), citing *Barclay v. Florida*, 463 U.S. 939, 970-71, 77 L. Ed. 2d 1134, 1157, 103 S. Ct. 3418, 3435-36 (1983), noted that the sentencing process assumes the court will exercise judgment in light of its background, experiences, and values. Therefore, we find that the court did not violate V.O.'s right to due process by considering its personal knowledge of the facility in St. Charles.

## CONCLUSION

In light of the foregoing, we are unable to say that a conclusion

opposite to that reached by the circuit court is clearly apparent. Therefore, we find that the circuit court's order committing V.O. to the juvenile division of the DOC was not against the manifest weight of the evidence, and we affirm that order.

Affirmed.

McCUSKEY and HOMER, JJ., concur.