No. 3--95-0835

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

IN THE INTEREST OF V.O.,           )    Appeal from the Circuit

          A Minor.                 )    Court of the 10th

                                   )    Judicial Circuit, Peoria

PEOPLE OF THE STATE OF ILLINOIS,   )    County, Illinois

                                   )    

          Petitioner-Appellee,     )    

                                   )    No. 93-J-94

          v.                       )

                                   )

V.O.,                              )    Honorable                

                                   )    Stewart Borden

          Respondent-Appellant.    )    Judge, Presiding

_________________________________________________________________

                                OPINION        

________________________________________________________________

     V.O., a minor, appeals from an order of the circuit court of

Peoria County which adjudicated him delinquent and committed him

to the juvenile division of the Department of Corrections (DOC)

for a term not to exceed his 19th birthday.  V.O. contends on

appeal that the court erred in denying his request for a

continuance to be evaluated by the Department of Alcohol and

Substance Abuse (DASA) for potential acceptance into treatment,

and in relying on its personal knowledge of the DOC's facility

when committing him.  For the following reasons, we affirm.

                                   FACTS

     A September 1995 juvenile delinquency petition alleged that

V.O. committed the offense of arson (720 ILCS 5/20-1(a) (West

1994)) in that by means of fire he knowingly damaged a building

in Peoria, Illinois.

     At an October 1995 adjudicatory hearing, evidence

established that on September 25, 1995, a 14 year old M.W. and 15

year old V.O. entered an abandoned, dilapidated building where

they set several small fires to plastic found around some of the

windows.  When flames dripped to the ground, the boys stomped

them out.  The boys left the building and returned approximately

10 to 15 minutes later.  V.O. testified that when he and M.W.

returned to the building, he did not intend to start a fire. 

According to V.O., he stood in the doorway while M.W. re-

entered the building and started the fire which resulted in

damage.  M.W. testified, however, that it was V.O. who started

the fire which resulted in damage.  Both boys ran from the scene

of the fire, and neither of them made an effort to put the fire

out or to contact the authorities.

     The court found that V.O. was not credible and determined

that he started the fire which damaged the building.  The court

set a dispositional hearing for November 16, 1995, and granted

V.O.'s request that he undergo a drug and alcohol evaluation.

     On the day of V.O.'s dispositional hearing, his counsel

requested that the court delay the proceedings due to the fact

that the drug and alcohol evaluation had not been performed and

TASC had not yet evaluated V.O.  Counsel argued that this

evaluation was essential in order to provide the court with

information concerning residential treatment placement.  The

court denied the request, finding that V.O., by his own

admission, had a serious drug and alcohol problem, and noting

that it was aware of the available facilities for such treatment.

     A dispositional social history report filed November 16,

1995, revealed that V.O. had abused drugs and alcohol since the

age of 12, and that his usage progressed from monthly to weekly

to daily.  V.O. had never been treated for his addiction, and his

adolescent years were characterized as "the point of explosive

deviant behavior."  Counseling efforts at the Human Service

Center and the Children's Home Association failed, and V.O. had a

history of prior delinquency.  Specifically, in April 1993, V.O.

was adjudicated delinquent for the offense of aggravated assault

and was placed on probation for one year.  In August 1994, V.O.

was adjudicated delinquent for the offense of unlawful possession

of firearms and was committed to the juvenile division of the DOC

for a period not to exceed 364 days.

     This report also contained a recommendation by the director

of the juvenile court services (the director).  The director

recommended that V.O. be committed to the juvenile division of

the DOC, with a review after 120 days served.  Further, that if

after such review, the DOC recommends that V.O. return to the

community, then V.O. should be placed on probation for 2 years

and enrolled in appropriate juvenile court services' programs.

     A juvenile detention center report was also filed and

indicated that V.O.'s interaction with the staff had been one of

"total cooperation."  It noted that V.O. accepted authority

figures, displayed a positive demeanor and attitude, and was

considered a normal security risk.

     V.O. submitted a letter to the court that acknowledged his

alcohol and drug addiction, and requested an evaluation for

potential placement and treatment in a rehabilitation center.

     After finding that residential treatment in an unlocked

facility would not be appropriate, due to V.O.'s prior record and

the seriousness of his present offense, the court committed V.O.

to the juvenile division of the DOC in St. Charles, Illinois, not

to exceed his 19th birthday.  The court found commitment

necessary to insure the protection of the public from the

consequences of V.O.'s criminal activity.  The judge indicated

that he had visited the DOC's facility in St. Charles and

observed that it had a dedicated staff and a facility to treat

chemical dependency.  V.O. appeals the court's commitment order.

                                    I.

     V.O. contends that the court erred in failing to delay his

dispositional hearing until DASA had evaluated him for potential

acceptance into treatment.  In support of his contention, V.O.

relies upon the Juvenile Court Act (the Act), which permits as a

dispositional alternative admission of a delinquent minor for

treatment with DASA "where authorized under the Alcohol and Other

Drug Abuse and Dependency Act [20 ILCS 301/40-20 (West 1994)]." 

705 ILCS 405/5-23(a)(3) (West 1994).

     However, section 40-20 cited in the Act and relied on by

V.O. was repealed by Pub. Act. 89-202, eff. July 21, 1995, two

months prior to the filing of V.O.'s delinquency petition, three

months prior to his adjudication of delinquency, and four months

prior to his DOC commitment.  At the time of V.O.'s dispositional

hearing, there was no legislation enacted to replace section 40-

20.  Therefore, we find that the court neither violated the Act,

nor erred by failing to delay V.O.'s dispositional hearing until

such an evaluation was conducted.  Further, the record indicates

that the court noted that V.O. had been detained for 53 days, and

acknowledged that to prolong this matter would not "serve any

useful purpose, either to the minor or for interests of justice

*** [stating] it's time to come to a disposition and address the

problem that's before us."

     The disposition of a juvenile rests within the sound

discretion of the trial court and will not be reversed unless it

is contrary to the manifest weight of the evidence, i. e. when an

opposite conclusion is clearly apparent.  In re A.D., 228 Ill.

App. 3d 272, 591 N.E. 2d 949 (3d Dist. 1992).

     In turning to the record, the following facts support the

court's commitment of V.O. to the juvenile division of the DOC:

(1) parental attempts to help V.O., including counseling efforts,

failed; (2) the dispositional social history report recommended

DOC commitment; (3) V.O. had a history of prior delinquency; (4)

V.O.'s current charge of arson was a serious offense; and (5) the

court made a specific finding that V.O. was not credible and that

he started the fire which caused damage to the building. 

     Further, the court properly considered that V.O.'s

commitment was necessary to insure the protection of the public

from the consequences of his criminal activity.  In re A.D., 228

Ill. App. 3d at 276 (in entering a commitment order a court may

properly consider the protection of the public.)

     Under these circumstances, we find that the court's

commitment of V.O. to the juvenile division of the DOC was not

against the manifest weight of the evidence.

     Lastly, V.O. asserts that the court violated his right to

due process by considering its personal knowledge of the facility

in St. Charles.  However, despite the fact that V.O. had been

previously committed to St. Charles, and was familiar with the

facility, he failed to challenge the court's observations as

being inaccurate.  Our supreme court in People v. Tye, 141 Ill.

2d 1 (1990), citing Barclay v. Florida, 463 U.S. 939, 970-71, 77

L. Ed. 2d 1134, 1157, 103 S. Ct. 3418, 3435-36 (1983), noted that

the sentencing process assumes the court will exercise judgment

in light of its background, experiences, and values.  Therefore,

we find that the court did not violate V.O.'s right to due

process by considering its personal knowledge of the facility in

St. Charles. 

                                CONCLUSION

     In light of the foregoing, we are unable to say that an

opposite conclusion than that reached by the circuit court is

clearly apparent.  Therefore, we find that the circuit court's

order committing V.O. to the juvenile division of the DOC was not

against the manifest weight of the evidence, and we affirm that

order.

     Affirmed.

     MICHELA, J., with McCUSKEY and HOMER, J.J., concurring.